UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| Jane Doe #1 | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:17-cv-00040 |
| | ) | |
| | ) | Judge Aleta A. Trauger |
| v. | ) | |
| | ) | |
| DÉJÀ VU CONSULTING, INC. | ) | |
| DÉJÀ VU SERVICES, INC, | ) | |
| DÉJÀ VU OF NASHVILLE, | ) | |
| INC., HARRY MOHNEY, AND | ) | |
| JASON MOHNEY | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO PROCEED
PSEUDONYMOUSLY, TO PERMIT FILING OF ALL UNREDACTED CONSENTS
UNDER SEAL, AND FOR ENTRY OF A PERMANENT PROTECTIVE ORDER**

I.  Introduction

Plaintiff, Jane Doe #1 (hereinafter "Plaintiff" or "Doe #1") requests that the Court permit her, Jane Doe #2, and all other similarly situated employees who opt-in (hereinafter in the aggregate "Plaintiffs"), to proceed pseudonymously, to permit filing of all unredacted consent forms under seal, to require redaction of any identifying information filed in Court by any party to this action or any third parties, and for entry of the Permanent Protective Order (hereinafter "Protective Order") attached as Exhibit 1 to Plaintiff's motion, which prohibits disclosure of the identities of Plaintiffs or any other dancers or showgirls in public filings or otherwise, absent express permission by the Court. Permitting redaction of the signatures, names, and other potentially personal identifying information regarding Plaintiffs or any other opt-in plaintiffs or

1

witnesses in this matter, balances the interest of public disclosure with adult entertainers' privacy interests.

II.     Background

Plaintiff Jane Doe #1 filed her complaint pseudonymously, stating therein that she intended to seek the Court's permission to proceed by pseudonym because Plaintiff and opt-in plaintiffs will be disclosing "information of the utmost intimacy . . . because of the inherent danger of disclosing her identity in connection with her history of performing nude or semi-nude adult entertainment may invite opprobrium from her family, friends, community, current employer, and/or prospective employer." (*See* Doc No. 1 ¶13(A)-(B)). Plaintiff also stated that "the risk that current/former patrons knowing her identity may seek to stalk, commit violence, and/or risk other injury against her if her legal name is disclosed." *Id*.

After Plaintiff filed her motion for notice to putative class members, Defendants obtained an injunction in Michigan purporting to enjoin Plaintiff and her counsel from taking any actions proceeding with this case. (*See* Doc. No. 9). Nevertheless, on April 14, 2017, consistent with this Court's rules, the parties jointly submitted a Proposed Initial Case Management Order. Notably, this proposed order included under issues resolved: "Plaintiff permitted to proceed as Jane Doe in public filings." (*See* Doc. No. 15 ¶C). Although Defendants have previously agreed to allow Doe #1 to proceed by pseudonym, Defendants now oppose the entry of a permanent protective order that would effectuate that agreement. Defendants' counsel has also informed Plaintiffs' counsel that Defendants intend to oppose any motion to proceed by pseudonym.

On June 22, 2017, this Court entered an order granting Plaintiff's motion to proceed in this case. (*See* Doc. No. 34). This Court ordered Defendants to file their response to Plaintiff's Motion for Expedited Notice within 14 days of the entry of the Order. *Id.*

The parties agreed to a temporary protective order which the Court entered on July 3, 2017. (Docket No. 45). That same day, Plaintiffs' counsel provided identifying information to Defendants' counsel.

### III.    Law and Argument

A complaint must generally state the names of all parties. Fed. R. Civ. P. 10(a). Courts can excuse plaintiffs from identifying themselves in certain circumstances. The Sixth Circuit, when determining whether a plaintiff's privacy interests substantially outweigh the presumption of open judicial proceedings, considers: (1) whether the plaintiffs seeking anonymity are suing to challenge governmental activity; (2) whether prosecution of the suit will compel the plaintiffs to disclose information "of the utmost intimacy"; (3) whether the litigation compels plaintiffs to disclose an intention to violate the law, thereby risking criminal prosecution; and (4) whether the plaintiffs are children. *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004) (citing *Doe v. Stegall*, 653 F.2d 180, 185-86 (5th Cir. 1981)). "It is also relevant to consider whether the defendants are being forced to proceed with insufficient information to present their arguments against the plaintiff's case." *Anonymous v. City of Hubbard*, 2010 U.S. Dist. LEXIS 8170, at *3 (N.D. Ohio Jan. 11, 2010) (citing *Doe v. Porter,* 370 F.3d at 561).

The Sixth Circuit reviews a district court's decision to grant a protective order for an abuse of discretion. *Samad v. Jenkins*, 845 F.2d 660, 663 (6th Cir. 1988); *Doe v. Porter*, 370 F.3d at 560. The Court has the power to manage pretrial proceedings pursuant to Fed. R. Civ. P.16 (b) and may issue a protective order to "protect a party or person from annoyance,

3

embarrassment, oppression, …" pursuant to Fed. R. Civ. P. 26(c). Furthermore, pursuant to Fed. R. Civ. P. 5.2 the Court may order filings be made under seal without redaction, order the person who made the filing to file a redacted version for the public record, and enter a protective order for good cause requiring redaction of additional information. Therefore, it is entirely within this Court's discretion to protect Plaintiffs, and the putative class members, from publicly disclosing their identities. Plaintiffs contend that prosecution of the suit will compel the plaintiffs to disclose information "of the utmost intimacy." That is, their employment as exotic dancers would subject them to alienation, public shame, and harm to future job prospects as well as the potential for stalking and physical harassment or assault. As Doe #1 states, and as Defendants implicitly acknowledge, it is industry standard for exotic dancers to use stage names. These stage names are used to ensure the privacy and safety of the dancers. If it is good enough for Defendants when it ensures they will make money from the labor of the putative class, it should be good enough for them when the class members seek to enforce their important statutory rights.

Plaintiffs are not asking the Court to make new law. Indeed, the Sixth Circuit has already ruled that the identity of Defendants' dancers should be protected from public view. *See, infra, Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty.*, 274 F.3d 377, 395 (6th Cir. 2001). Instead, Plaintiffs merely ask this Court to do what many other courts have done, and what Defendants have agreed to in other cases – and for a time – in this case: allow exotic dancers to vindicate their FLSA rights without risking alienation, public opprobrium, or even physical threats or harm. Plaintiffs' request will cause no prejudice to the Defendants, as Plaintiffs have already provided their names, stage names, locations worked, and dates of employment to Defendants.

4

### A. Defendants Have Agreed to Allow Other Plaintiffs to Proceed Under Pseudonyms

Defendants have agreed to allow other plaintiffs to proceed by pseudonym in similar litigation. Specifically, in *Jane Doe 1, et al v. Déjà Vu Services, Inc*, et al. 2:16-cv-10877-SJM-PTM (hereinafter "Michigan Proceeding" or "Michigan Settlement,") and *Jane Doe, et al v. Cin-Lan Inc.*, et al., 2:08-cv-12719-SJM-MJH. Unlike with Plaintiffs in this case, Defendants stipulated to plaintiffs in the Michigan Action proceeding pseudonymously through the entire litigation.[1]

In *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty*., 274 F.3d 377, 395 (6th Cir. 2001) the Sixth Circuit held that all sexually oriented business permit applicants' names and current and past residential addresses constitute protected private information, exempting that information from Tennessee's Open Records Act, and prohibiting Metropolitan Nashville from publicly releasing such private information. In that case the Sixth Circuit found "[t]he Plaintiffs have presented significant evidence that the requirement that applicants submit their names and past and current addresses to a public forum poses serious risks to their personal security." In fact, a Deja Vu entertainer testified that entertainers in the past had been stalked, harassed, and injured by customers, and there are many local organizations with a strong stance against her profession, erotic speech, making her fearful given serious potential risks to her physical safety and well-being. Therefore, Defendants have long known the threat felt by entertainers when faced with public disclosure of their identities.[2]

---

[1] It appears Defendants are treating Plaintiffs in this case differently because they have elected to file their own FLSA complaints and pursue collective action notice pursuant to their rights under 29 U.S.C. §216(b). This could be considered evidence of Defendants' retaliatory animus towards those seeking to vindicate their FLSA rights which is prohibited by 29 U.S.C. §215(a)(3), also known as the FLSA's anti-retaliation provision.

[2] Defendants' insistence that Plaintiffs publicly disclose their identities notwithstanding the Sixth Circuit's holding in their case against Metro is further evidence that Defendants' true motive may be to punish dancers willing to come forward with FLSA claims.

Defendants and other courts recognize that there are privacy interests for plaintiffs engaged in the adult entertainment industry that outweigh the public interest in open judicial proceedings, particularly at this stage of litigation. *E.g.*, *Roes 1-2 v. SFBSC Mgmt*., LLC, 77 F. Supp. 3d990, 994 (N.D. Cal. 2015)(The court allowed the plaintiffs and future opt-ins to proceed pseudonymously and file redacted consents forms, holding that plaintiffs' interest in safeguarding their personal well-being outweighed the public's interest in knowing the plaintiffs' identities.); *Does 1-3 v. Coliseum, Inc.,* 2013 U.S. Dist. LEXIS 158416.

Further tipping the balance in favor of anonymity is the fact that Defendants frequently allow their showgirls to use fictitious stage names because of the inherent risks to showgirls in the adult entertainment industry, and for the showgirls' privacy interest and physical well-being. Further, the court in *SFBSC Mgmt., LLC* found that the defendant (who is affiliated with the Defendants here) admitted that the public disclosure of an exotic dancer's identity presents substantial risk of harm. *Roes 1-2 v. SFBSC Mgmt*., LLC, 77 F. Supp. 3d at 994.

### B. Adult Entertainment Involves Human Sexuality, an Area of Utmost Intimacy.

Courts have allowed showgirls to proceed by pseudonym based on reasoning relevant to the considerations set forth by the Sixth Circuit. Courts recognize that cases involving the adult entertainment industry fall ". . .into what may be roughly called the area of human sexuality."

The Ninth Circuit reasoned that the same judicial instinct that applied to cases that involved the "sensitive and highly personal area" of human sexuality should apply to exotic dancers and stated:

> Courts have often allowed parties to use pseudonyms when a case involves topics in this "sensitive and highly personal" area. The most famous case of this sort — which, however, did not address the question of pseudonymity — is certainly *Roe v. Wade*, 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973). But there are

6

many others. *E.g., United States v. Doe*, 488 F.3d 1154, 1155 n.1 (9th Cir. 2007) (allowing defendant convicted of producing child pornography to use pseudonym); *Doe v. Megless*, 654 F.3d 404, 408 (3rd Cir. 2011) ("Examples of areas where courts have allowed pseudonyms include . . . abortion, . . . transexuality . . . and homosexuality.") (quotation omitted) (cited by *SFBSC* at ECF No. 19 at 4-5); *John Doe 140 v. Archdiocese of Portland*, 249 F.R.D. 358, 361 (D. Or. 2008) (plaintiff alleging that he was sexually abused as minor allowed to proceed anonymously); *Doe v. United Serv. Life Ins. Co.*, 123 F.R.D. 437 (sexual orientation); *Doe v. Deschamps*, 64 F.R.D. 652 (D. Mont. 1974) (abortion; collecting older cases)

*Roes 1-2 v. SFBSC Mgmt.*, LLC, 77 F. Supp. 3d at 994. The court recognized as reasonable concerns that disclosure of adult entertainers' identities would threaten both their careers and possibly their physical wellbeing. Specifically, the court stated in support of this finding that "it is customary for the exotic dancers to use . . . stage names." While defending that case, the defendants (whose entities are affiliated with or include the Defendants in this case) "agreed that the public disclosure of an exotic dancer's true identity presents substantial risk of harm." *Id.* at 995.

> There is nothing about the plaintiffs' identities that makes it critical to the working of justice to reveal those identities. Anonymity, in other words, does not in this case threaten the principle of open courts. (Likewise, "the question whether there is a constitutional right to abortion is of immense public interest, but the public did not suffer by not knowing the plaintiff's true name in *Roe v. Wade." Advanced Textile*, 214 F.3d at 1072 n. 15.) The great bulk of this case will be on the public record. The basic facts of the plaintiffs' employment and the defendants' challenged conduct, the court's reasoning, and the resulting interplay of those things — which is to say, in a word, the law that runs through and results from this case — will be open to the public. And that is the crucial thing. . . The court holds that, in this case, the plaintiffs' interest in safeguarding their personal well-being outweighs the public's interest in knowing the plaintiffs' identities

*Roes 1-2 v. SFBSC Mgmt.*, LLC, 77 F. Supp. 3d 990, 996 (N.D. Cal. 2015); *see also Balance Studio, Inc. v. Cybernet Entm't, LLC*, 204 F. Supp. 3d 1098, 1102 (N.D. Cal. 2016).

In *Doe v. George St. Photo & Video, LLC*, 2016 U.S. Dist. LEXIS 83965, at *6 (N.D. Cal. June 28, 2016), the court held that the public may have an interest in allowing Plaintiff to

7

proceed under a pseudonym because to deny Plaintiff's request under the circumstances of this case might not only prevent Plaintiff from proceeding on her claim, but might also discourage others who suffer online public shaming and other such offenses from asserting their claims for fear of further cyber-related exposure. Similarly, in *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1073 (9th Cir. 2000), the Ninth Circuit stated, "permitting Plaintiffs to use a pseudonym will serve the public's interest in this lawsuit by enabling it to go forward."

The Ninth Circuit's reasoning in *Advanced Textile Corp.* is applicable to this case. Here, if Plaintiffs and the putative class members are not permitted to proceed by pseudonym, there will likely be a chilling effect on the vindication of important FLSA rights.

### C. Public Opprobrium Analogous to Infamy Associated With Criminal Behavior

Although Plaintiffs confess neither to illegal acts nor purposes, they have, "by filing suit, made revelations about their personal beliefs and practices that are shown to have invited an opprobrium analogous to the infamy associated with criminal behavior. *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004) (quoting *Doe v. Stegall*, 653 F.2d 180, 185-86 (5th Cir. 1981).

The social stigma is based on the widely held belief that strippers engage in acts of prostitution or are the moral equivalent of prostitutes because they engage in morally reprehensible behavior that approaches criminal behavior. This stigma is further evidenced by the fact many jurisdictions within the United States have various laws restricting stripteases, public nudity, and related endeavors. *See, e.g.,* Eatonville, Fla. Mun. Code §6-51, *et. seq.*; Orlando, Fla. Mun. Code §37.01, *et seq.*; Chattanooga, Tenn. Mun.Code §11-421, *et seq.*; Detroit Mich. Mun. Code §5-15-1, *et seq.* There are ordinances prohibiting "adult entertainment" businesses from operating within certain distances of houses, schools, and churches. *See*

8

Eatonville, Fla. Mun. Code §6-59(prohibiting establishment being located within 500 feet of a preexisting religious or educational institution and of any area zoned residential); Chattanooga, Tenn. Mun. Code §38-568 (prohibiting establishment being located within 500 feet of place of worship, day care center, or other adult-oriented establishment). There are also laws prohibiting or restricting topless and fully nude clubs. *See*, *e.g.*, Detroit, Mich. Mun. Code §5-15-7 (prohibiting employees from appearing in a state of nudity). These regulations are adopted because of these businesses are associated with personal and property crimes, prostitution, solicitation for prostitution, lewd and lascivious behavior, illicit drug use, drug trafficking, and sexual exploitation. *See*, *e.g.*, Detroit, Mich. Mun. Code §5-15-1; Eatonville, Fla. Mun. Code §6-54(a)(4).

The Tennessee Adult-Oriented Establishment Act (hereinafter "Tennessee Act") requires licenses to operate, permitting of performers, and establishes other regulations. Tenn. Code Ann. §7-51-1101, *et. seq.* The Sixth Circuit noted that this type of legislation is enacted "to address the recognized negative secondary effects associated with 'adult' or sexually oriented businesses, including crime, spread of sexually transmitted diseases, lowering of property values, and other related public welfare and safety issues." *Entm't Prods., Inc. v. Shelby Cty.*, 588 F.3d 372, 376 (6th Cir. 2009).

In Nashville, the Sexually Oriented Business Licensing Board began enforcing new guidelines in 2006. These new guidelines included tightened restrictions on strip clubs, including strict rules against physical contact between a performer and a customer requiring a three-foot separation. *See Nashville Entm't, Inc. v. Metro. Sexually Oriented Bus. Licensing Bd.*, 2012 Tenn. App. LEXIS 248, *10, 2012 WL 1379850 (Tenn. Ct. App. Apr. 18, 2012) (citing Nashville, Tenn., Municipal Code § 6.54.140.C that provides "All performances shall only occur

9

upon a stage of at least eighteen inches above immediate floor level and removed at least three feet from nearest customer."). The regulations also require dancers to register with Metro. Nashville, Tenn. Mun. Code §6.54.060. Under Metro's zoning guidelines, adult-oriented businesses, including strip clubs are only permitted in geographic areas within the "adult entertainment overlay." *Id.* §17.36.250. Such adult-oriented businesses must also be at least 500 feet from schools, parks, churches and day care centers. *Id.* §17.36.260. The fact that jurisdictions exercise such heavy regulatory supervision underscores the public opprobrium for entertainers in the adult entertainment industry.

### D. Jane Doe #1 Has Demonstrated Legitimate Privacy Concerns

Doe #1 will be filing, under seal, a declaration detailing her privacy interests and concern for her physical well-being for the Court's consideration.[3] First, Plaintiff testifies to serious reservations about pursuing her FLSA claims if she is not permitted to proceed by pseudonym. Second, Plaintiff is from a religious family, with strong moral and religious beliefs, and fears the opprobrium towards not only herself, but also her family. She has kept her work as an adult entertainer from her family, members of her family's religious community, and the public at large because she is concerned about alienation and condemnation. Beyond the moral condemnation likely the to come from the extreme religious members of her family and community, there is a substantial risk that she will be held in the same public scorn as a criminal despite the legal nature of her profession. Third, Plaintiff fears retaliation within her industry, from current and potential employers, former and current co-workers. Moreover, given this case involves a wage dispute, the sex industry, and exploitation of women, it is likely that this case

---

[3] Plaintiff will also be moving for a protective order to protect disclosure of the information contained in this declaration.

10

will garner public attention, particularly in this age of social media.[4] Plaintiff fears that her name will be publicly disseminated, and that she will be the subject of online trolling, public ridicule, familial condemnation, and other forms of harassment.

Finally, and perhaps most importantly, Plaintiff fears for her safety if her identity is made public. It is widely recognized within the industry, and has been recognized by the Sixth Circuit, there is a high risk for stalking, physical harm, online harassment, and even physical abuse. For these reasons, nearly all exotic dancers use pseudonyms, or stage names, to protect safeguard their privacy and protect against emotional or physical harm.

Prudence dictates that the general interest in public disclosure is outweighed by the rational, well recognized fears of adult entertainers, including public opprobrium that can manifest through harassment, stalking, attacks on her career, and serious personal injury or death. It is unlikely those wishing her or any other Plaintiff harm will announce their intentions to the public before their identity is revealed. There is little reason that a protective order limiting disclosure of Plaintiffs' identities to Defense counsel, and only those individuals who agree to be bound by the protective order, would hamper the Defendants' defense of this case. Certainly, this decision lies within the sound discretion of this Court and granting this motion could not be viewed as an abuse of discretion.

## IV. Conclusion

The Court should find the public's interest in open judicial filings does not presently weigh against allowing Plaintiff to proceed under a pseudonym. In fact, Plaintiff's expressed hesitation in proceeding in the litigation without this protection would undermine the public

---

[4] Indeed, Plaintiffs' counsel has already been approached by members of the media.

interest in the remedial purpose of the Fair Labor Standards Act. Plaintiff has reasonable concerns for physical safety from the public at large, the fear of retaliation within the industry, and public opprobrium given her family's religious beliefs and affiliation. Moreover, there is nothing gained or loss from not disclosing her identity to the public. The public filing considerations will not be negatively impacted by the use of a pseudonym as the substantive facts, legal, questions, and related matters will be there for the public to scrutinize. Allowing opt-ins to file redacted consents for public viewing and under seal as part of the record will protect their statute of limitations under the FLSA. More importantly, it will protect their personal security, and is consistent with the strong remedial and humanitarian purpose of the FLSA.

Respectfully submitted,

Yezbak Law Offices

*/s/ Charles P. Yezbak, III*
Charles P. Yezbak, III (#18965)
Attorney for Plaintiff
2002 Richard Jones Road, Suite B-200
Nashville, Tennessee 37215
(615) 250-2000
(615) 250-2020 Facsimile
yezbak@yezbaklaw.com
*Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of July, 2017, I filed this document *Memorandum in Support of Plaintiff's Motion to Proceed Pseudonymously, to Permit Filing of all Unredacted Consents Under Seal, and for Entry of a Permanent Protective Order* with the Clerk of the Court using the ECF, which sent electronic notice to the following opposing counsel:

**Edward M. Bearman**
Law Office of Edward M. Bearman
780 Ridge Lake Boulevard
Suite 202
Memphis, TN 38120
(901) 682-3450
(901) 682-3590 (fax)
ebearman@jglawfirm.com

**Matthew J. Hoffer**
SHAFER & ASSOCIATES, P.C.
3800 Capital City Boulevard, Suite 2
Lansing, Michigan 48906
517-886-6560 – Tel.
517-886-6565 – Fax
Matt@BradShaferLaw.com

Dated: July 6, 2017         /s/ Charles P. Yezbak, III
                            Charles P. Yezbak, III