**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JANE DOE #1,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:17-cv-00040** |
| | ) | **Judge Aleta A. Trauger** |
| **DÉJÀ VU CONSULTING INC.** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM</u>**

Plaintiff Jane Doe #1 filed her initial Complaint in this court on January 11, 2017, against

defendants Déjà Vu Consulting, Inc., Déjà Vu Services, Inc., Déjà Vu of Nashville, Inc., Harry

Mohney, and Jason Mohney; she filed her First Amended Collective Action Complaint on

January 23, 2017. (Coll. Action Compl., Doc. No. 1; First Am. Coll. Action Compl., Doc. No. 5.)

The First Amended Collective Action Complaint asserts claims for violations of the hourly wage

and overtime wage provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206 and

207, and purports to seek relief on behalf of the plaintiff and "on behalf of all other similarly

situated individuals working as showgirls/entertainers classified as independent contractors by

Defendants" (Doc. No. 5, at 1), under the collective action provision of the FLSA, 29 U.S.C. §

216(b).

**I.     Introductory Summary**

Now before the court are the following six interrelated motions:

(1) Plaintiff's Motion for Expedited Court-Supervised Notice to Putative Class
Members Pursuant to 29 U.S.C. § 216(b) (Doc. No. 6) (hereafter, "Motion for
Notice");

(2) Defendants' Motion to Reconsider (Doc. No. 43) the court's previous Order (Doc. No. 34);

(3) Defendants' Motion to Dismiss or to Stay in Favor of Arbitration (Doc. No. 40) (hereafter, "Motion to Compel Arbitration");

(4) Plaintiff's Motion to Proceed Pseudonymously, to Permit Filing of All Unredacted Consents Under Seal, and for Entry of a Permanent Protective Order (Doc. No. 49);

(5) Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 59); and

(6) Plaintiff's Motion to Hold Defendants' Motion to Dismiss or to Stay in Favor of Arbitration in Abeyance (Doc. No. 67) (hereafter, "Motion to Hold in Abeyance").

All of these motions have been fully briefed and are ripe for review.

Logically, the court should consider a motion addressing jurisdiction first. However, because the Motion to Dismiss for Lack of Personal Jurisdiction is based on the argument that the plaintiff has not revealed her identity as the real party in interest, the court must first address the plaintiff's Motion to Proceed Pseudonymously. The court finds, as set forth below, that the plaintiff should be permitted to proceed anonymously. However, the protective order she seeks goes too far, and the other relief she requests is unnecessary in light of the court's rulings on the other pending motions. Because the court will grant the plaintiff's Motion to Proceed Pseudonymously, the defendants' Motion to Dismiss for Lack of Jurisdiction will be denied as moot.

The court must next consider the defendants' Motion to Reconsider, which addresses whether the court improperly concluded that the temporary stay and preliminary injunction entered in a related action pending in Michigan had expired and, therefore, that this action could proceed. (*See* Order, Doc. No. 34.) If the court improperly ignored an injunction staying this case, then any other further action taken by the court would be invalid. The court, however,

reaffirms its prior decision and will deny the Motion to Reconsider.

The parties dispute whether the court should first consider the Motion for Notice or the Motion to Compel Arbitration. The plaintiff has formally requested that the court consider her Motion for Notice first. As set forth herein, the court finds that it must first consider the Motion to Compel Arbitration prior to addressing the Motion for Notice. The Motion to Hold in Abeyance will therefore be denied.

Further, the court finds that none of the plaintiff's objections to arbitration has merit. The Motion to Compel Arbitration will be granted. Because all of the plaintiff's claims are subject to arbitration under the very broadly worded arbitration agreement, the court will dismiss this action without prejudice rather than stay it. The plaintiff's Motion for Notice will be denied as moot.

## II.    Plaintiff's Motion to Proceed Pseudonymously and Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

### A.    Procedural and Factual Background

The plaintiff requests authorization to proceed pseudonymously and to submit all unredacted collective action consent forms filed by other putative plaintiffs under seal; she also seeks entry of a permanent protective order. (Doc. No. 49.) In support of this motion, she has submitted her supporting Memorandum, two sealed unredacted Notices of Consent (her own and that of Jane Doe #2), and the Second Declaration of Jane Doe #1. (Doc. Nos. 50, 51, 52.) The defendants have filed their Response in opposition (Doc. No. 58), which also constitutes their Memorandum in support of the separately filed Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 59). The plaintiff filed a Reply (Doc. No. 65) as well as a Response in opposition to the Motion to Dismiss (Doc. No. 66).

The First Amended Collective Action Complaint ("Complaint") is the operative pleading in this action. In it, the plaintiff asserts claims individually and on behalf of a putative FLSA class of similarly situated employees and former employees of the defendants, Déjà Vu Consulting, Inc., Déjà Vu Services, Inc., Déjà Vu of Nashville, Harry Mohney, and Jason Mohney (collectively, "defendants"). She alleges that she and similarly situated individuals worked at the defendants' various establishments as "showgirls/entertainers (also known as performers/dancers/strippers/exotic dancers . . .)." (Compl. ¶ 3.) She alleges generally that she and similarly situated performers were misclassified as independent contractors rather than as employees, in violation of the FLSA, and that they were improperly denied hourly wages and required to pay defendants mandatory illegal kickbacks.

In her Complaint, the plaintiff specifically states that she seeks to proceed in this court pseudonymously and, at the time she filed the Complaint, anticipated the prompt filing of a motion requesting court permission to do so. She stipulates that, "[u]pon entry of a court[-]approved protective order, Named Plaintiff will disclose her identity to Defense counsel and certain agents of Defendants." (Compl. ¶ 13.)[1] She also asserts that her privacy interests "substantially outweigh the presumption of open judicial proceedings," because (1) prosecution of this suit will involve disclosure of "information of the utmost intimacy"; (2) "the inherent danger of disclosing her true identity in connection with her history of performing nude or semi-nude . . . may invite opprobrium from her family, friends, community, current employer, and/or prospective employer"; and (3) disclosure of her true identity gives rise to a risk of stalking and assault by current and former patrons. (*Id.*) She posits that performers engaged in nude and semi-nude dancing frequently use fictitious stage names because of the acknowledged risk of

---

[1] The Complaint contains two paragraphs enumerated 13. This reference is to the first. (*See* Compl. at 4–5.)

disclosing their true identities and that the defendants will not be prejudiced by the court's permitting her to proceed pseudonymously, because her identity will be disclosed to the defendants. (*Id.*)

In the Declaration submitted in support of her motion, the plaintiff attests that she would "have serious concerns for [her] privacy, safety, and personal well-being" if not permitted to proceed pseudonymously. (Doe 2d Decl., Doc. No. 52 ¶ 1.) She avers that she uses a stage name when performing to protect her identity from customers and that this is "common in the adult industry . . . to avoid customers who may seek to contact[] dancers outside of work, for fear that this could escalate to stalking or violence." (Doc. No. 52 ¶ 10.) She also contends that her parents are "devout members of a Christian church" and that, given her "family's involvement with the church and their religious beliefs, [she] fear[s] that if [she] was publicly identified as an adult entertainer then it would invite criticism and negativity towards [her] and [her] family." (Doc. No. 52 ¶ 7.) In addition, she fears that in this "day of social media," disclosure of her identity could be easily disseminated and used to harass her and her family. (Doc. No. 52 ¶ 11.) And finally, she fears that, without entry of a protective order, the defendants, who are "powerful people in the adult entertainment industry," could use knowledge of her true identity to hurt her career. (Doc. No. 52 ¶¶ 13–14.)

On the basis of these allegations, the plaintiff seeks to pursue this case pseudonymously and requests that the court enter a permanent protective order requiring the defendants to maintain the confidentiality of her identity. In their Response in opposition to the motion, the defendants argue that the plaintiff has not carried her burden of showing that her privacy concerns substantially outweigh the presumption in favor of open judicial proceedings. Specifically, they contend that (1) an unspecified fear of retaliation does not weigh in her favor;

(2) she has not provided evidence of a threat of stalking or physical violence; and (3) mere embarrassment about performing as a nude dancer does not outweigh the presumption of open proceedings. They also point out that numerous exotic dancers have brought suit in their own names. (*See* Doc. No. 58, at 11 n.2 (collecting cases).) The defendants request that, upon denial of the plaintiff's motion, her Complaint be dismissed unless she refiles promptly under her legal name. Their Motion to Dismiss for Lack of Personal Jurisdiction is premised on their argument that the plaintiff has not shown that she should be permitted to proceed pseudonymously.

### B.       Standard of Review

"As a general matter," Rule 10 of the Federal Rules of Civil Procedure requires that a complaint state the names of all parties. *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004); Fed. R. Civ. P. 10(a). It is, however, within a district court's discretion to excuse a plaintiff from the requirement that she identify herself if she shows that her "privacy interests substantially outweigh the presumption of open judicial proceedings." *Porter*, 370 F.3d at 560. Considerations relevant to that inquiry include, but are not necessarily limited to:

> (1) whether the plaintiffs seeking anonymity are suing to challenge governmental activity; (2) whether prosecution of the suit will compel the plaintiffs to disclose information "of the utmost intimacy"; (3) whether the litigation compels plaintiffs to disclose an intention to violate the law, thereby risking criminal prosecution; and (4) whether the plaintiffs are children.

*Id.* (quoting *Doe v. Stegall*, 653 F.2d 180, 185–86 (5th Cir. 1981)).

### C.       Analysis

Although the defendants are correct that numerous entertainers in the adult industry have chosen to pursue litigation in their own names, it nonetheless appears that courts presented with properly supported motions to proceed pseudonymously in this context have typically granted them. *See, e.g.*, *Balance Studio, Inc. v. Cybernet Entm't, LLC*, 204 F. Supp. 3d 1098, 1102 (N.D.

Cal. 2016) (granting the plaintiff/counter-defendant's motion to proceed anonymously where she worked "in adult sexual education in the area of bondage and sadomasochism"); *Jane Roes 1–2 v. SFBSC Mgmt., LLC*, 77 F. Supp. 3d 990 (N.D. Cal. 2015) (granting nude dancers' motion to proceed pseudonymously). *But see* 4 *Exotic Dancers v. Spearmint Rhino*, No. 08-4038, 2009 WL 250054 (C.D. Cal. Jan. 29, 2009) (denying nude dancers' motion to proceed pseudonymously). Here, the court finds that the balance of factors weighs in favor of permitting the plaintiff to file suit pseudonymously, to proceed pseudonymously through this stage in the proceedings, and to maintain the confidentiality of her identity even after dismissal of the suit.

In support of her motion, the plaintiff testifies that she fears the risk of stalking and physical violence by customers. The defendants argue that such a threat of harm is largely attenuated and hypothetical, pointing out that the plaintiff has not worked for the defendants for more than a year, that only her legal name, and not her stage name, would be present on the pleadings and court filings, and that it is unlikely that any customer from over a year ago would still be interested in finding her and doing her harm and be able identify her by her real name.

The defendants acknowledge, however, that it is customary in the industry for exotic dancers to use stage names in order to minimize the risk of harassment. (Doc. No. 58, at 7–8.) Moreover, the fact that the plaintiff has not worked for the defendant in over a year is largely immaterial. The plaintiff states in her Declaration: "In my profession, I use a stage name to protect my identity from customers." (Doc. No. 52 ¶ 3.) This statement indicates that she continues to pursue a career in the world of adult entertainment, even though she does not work for the defendants. And, regardless of whether she continues to work in that field, she runs the risk of having past customers and other unsavory characters pose a threat to her. In light of the ease with which information and images are disseminated in this age of the internet and myriad

platforms of social media, the court accepts as true, for purposes of the plaintiff's motion, that the mere fact that a plaintiff self-identifies as an exotic or nude dancer, *per se*, may place her at risk of harassment and stalking, including cyberstalking. The plaintiff is not required to prove a substantial risk of serious harm by pointing to some concrete or particularized threat. *Accord Jane Roes 1–2 v. SFBSC Management, LLC*, 77 F. Supp. 3d 990, 995 (N.D. Cal. 2015) (rejecting similar argument and finding that this factor weighed in favor of the motion to proceed pseudonymously, noting that the defendants actually admitted that exotic dancers customarily used stage names for reasons of privacy and personal safety and that disclosure of an exotic dancer's true identity "presents a substantial risk of harm"). The court finds that this factor weighs in favor of granting the plaintiff's motion.

The plaintiff also argues that she fears stigmatization and condemnation, not only for herself but also for her family, if it becomes known in her family's religious community that she works in the sex industry. The defendants, in response, argue that mere embarrassment is not sufficient to support a motion to proceed pseudonymously and that this case is "completely unlike the situation" in *Doe v. Porter*, where the court found that requiring the plaintiffs to reveal their personal religious beliefs could subject them to harassment. 370 F.3d at 560.

To the contrary, issues of religion and sexuality, as a cultural matter, are tightly interwoven and are, perhaps, equally highly charged in our society, as the plaintiff's Declaration suggests. Moreover, the possibility of social stigma cannot necessarily be equated with mere embarrassment. *See Doe v. Rostker*, 89 F.R.D. 158, 161, 162 (N.D. Cal. 1981) (observing that the "common thread" uniting cases where the plaintiffs had been permitted to proceed pseudonymously "is the presence of some social stigma or the threat of physical harm to the plaintiffs attaching to [public] disclosure of their identities," and distinguishing such cases from

those involving the risk of "some embarrassment or economic harm"). Here, the plaintiff alleges that her parents are devoutly religious members of a Christian church and that, in light of their involvement in the Church and the public's tendency to equate nude dancing (which is legal) with prostitution (which is not), she fears that her public identification as an adult entertainer "would invite criticism and negativity" toward herself and her family, as well as the possibility of confrontation, harassment, and invasion of privacy. (Doc. No. 52 ¶¶ 7–8.) The social stigmatization that the plaintiff could face goes beyond allegations of mere embarrassment. This factor, too, weighs in favor of anonymity. *Accord SFBSC Mgmt.*, 77 F. Supp. 3d at 994 (noting that the case brought by exotic dancers fell "into what may be roughly called the area of human sexuality" and that "courts have often allowed parties to use pseudonyms when a case involves topics in this 'sensitive and highly personal' area"); *see id.* ("For purposes of the anonymity discussion, it is enough to observe that courts have regularly responded to the especially sensitive nature of this area and have been willing to grant parties anonymity. The same judicial instinct should apply here.").

The defendants here have not identified any possibility of prejudice that might arise from granting the plaintiff's motion, and the court can find none. It is clear from the Declaration of Edwin Culbert (Doc. No. 41-1), filed by the defendants, that the defendants are already aware of the plaintiff's true identity. (*See also* Stipulated Temporary Protective Order, Doc. No. 46 ¶ 11 ("Counsel for Plaintiffs shall provide to Counsel for Defendants the name, stage name, and approximate performance dates of Jane Does 1–2 as soon as possible upon entry of this Stipulated Order.").) The fact that, as set forth below, the plaintiff will be required to pursue her claims through arbitration further minimizes any risk of prejudice to the defendants that might be caused by allowing her identity to remain sealed. Moreover, the vast bulk of the court record

remains open to the public. The mere fact that the record will not disclose the plaintiff's true name will not impede "public scrutiny of this case's operative issues." *SFBSC Mgmt.*, 77 F. Supp. 3d at 997.

In light of the absence of prejudice to the defendants or to the public, the court finds that the plaintiff's "privacy interests substantially outweigh the presumption of open judicial proceedings." *Porter*, 370 F.3d at 560. The court will therefore grant her motion to file suit pseudonymously and to maintain the confidentiality of her identity beyond the dismissal of this action. Having reached that conclusion, the court will deny as moot the defendants' Motion to Dismiss for Lack of Personal Jurisdiction.

The plaintiff also seeks to submit all future unredacted collective action consent forms filed by other putative plaintiffs under seal. Because this case will be dismissed in favor of arbitration, the plaintiff's request to file future consent forms under seal will be denied as moot.

The plaintiff also seeks entry of her proposed Permanent Protective Order (Doc. No. 49-1). This portion of the plaintiff's motion will be granted in part. While the court finds that the plaintiff is entitled to maintain her public anonymity in this action, the terms of the proposed Protective Order are overly broad, particularly given that this case will be referred to arbitration. The court will, however, enter an order directing the defendants to maintain the names and personally identifying information of Jane Doe #1 and #2 in complete confidence and not to disclose the information to any other person, party or entity except as strictly necessary to pursue their defense of this matter in arbitration.

## III. Motion to Reconsider

The defendants seek an order vacating the court's previous Order (Doc. No. 34) granting the plaintiff's request to be permitted to proceed with this litigation in light of the entry of the

Opinion and Order Granting Motion for Final Approval of Settlement in *Doe v. Déjà Vu Services, Inc.*, No. 2:16-cv-10877 (E.D. Mich.) (the "Michigan Action"), by the Honorable Judge Stephen J. Murphy, III. The plaintiff has filed a Response in opposition (Doc. No. 64), and the defendants have filed a Reply (Doc. No. 68). Addressing this motion requires the court to summarize some of the procedural background in this case and in the Michigan Action.

On January 23, 2017, the same day she filed her amended Complaint, the plaintiff filed her Motion for Notice (Doc. No. 6). Rather than responding to that motion in a timely fashion, the defendants submitted a Notice of Filing Preliminary Injunction Order Enjoining Case (Doc. No. 11) on March 9, 2017, to which were attached a copy of two orders entered in the Michigan Action—an Opinion and Order Granting the [Defendants'] Joint Motion for Preliminary Injunction and a subsequent Order amending the first. (Doc. Nos. 11-1, 11-2.) In the first Order, entered February 9, 2017, issued under the All Writs Act, 28 U.S.C. § 1651, Judge Murphy enjoined all related actions against any "Déjà Vu-Affiliated Nightclubs" from proceeding, pending approval of a nationwide collective-action settlement of the FLSA claims of current and former performers at those establishments. (Doc. No. 11-1, at 3–4.) The Amended Order lifted the injunction as to four cases that had already "either been resolved or ordered to private arbitration" prior to issuance of the original injunction. (Doc. No. 11-2, at 1.) The case now before the undersigned was specifically listed among the enjoined actions in both Orders. (Doc. Nos. 11-1, at 4, 11-2, at 2.) The court takes judicial notice that, of the three other federal cases listed in the Amended Order, two have now been voluntarily dismissed,[2] and the third was

---

[2] *Garcia v. Déjà Vu Consulting, Inc.*, No. 8:16-cv-01193 (M.D. Fla.) (dismissed with prejudice on January 12, 2017 pursuant to parties' Joint Notice of Dismissal With Prejudice); *Doe v. Las Vegas Bistro, LLC*, No. 2:17-cv-00205 (D. Nev.) (terminated on March 31, 2017 pursuant to the plaintiff's Notice of Voluntary Dismissal).

referred to arbitration.[3]

This court conducted a case management conference on April 17, 2017 with counsel for both parties, including defense counsel in the Michigan Action. At that conference and later by written Order, the court directed plaintiff's counsel to file a motion for authorization to proceed with this action, in light of the injunction issued in the Michigan Action. Before the parties had finished briefing that issue, however, the plaintiff filed a Notice of Termination of Michigan All Writs Act Injunction and Plaintiff's Withdrawing Her Motion for Permission to File a Reply and for a Hearing. (Doc. No. 33.) To this Notice, the plaintiff attached a copy of Judge Murphy's June 19, 2017 Opinion and Order granting the parties' joint Motion for Final Approval of Settlement and dismissing the action with prejudice. (Doc. No. 33-2.) That Order does not mention the preliminary injunction or temporary stay at all and does not enter the permanent injunction anticipated by the parties' original Joint Motion for Preliminary Injunction. This court construed the language of both the original Order granting the motion for preliminary injunction and the Order granting final approval of the settlement to mean that the preliminary injunction expired with the court's granting of final approval. The undersigned therefore granted the plaintiff leave to proceed. (*See* June 22, 2017 Order, Doc. No. 34.)

The defendants seek reconsideration of this court's determination that the preliminary injunction expired with the entry of the final approval of settlement. They argue that the preliminary injunction remains in effect until the *judgment* in the Michigan Action becomes final

---

[3] *Wilson v. 59th St LD Okla. City LLC*, No 5:16-cv-01124 (W.D. Okla. ), *appeal stayed*, No. 17-6066 (10th Cir. April 27, 2017). In this case, the district court had entered an Order on February 23, 2017, granting the defendant's Motion to Dismiss or Stay in Favor of Arbitration and administratively closing the case. The plaintiff appealed, but the appeal has been stayed pursuant to the parties' Joint Motion to Stay and Abate Proceedings "in deference to the settlement proceedings currently pending" in the Michigan Action and in light of the parties' belief that "final approval of the settlement in the Michigan action will resolve all claims of Appellant against Appellee." Joint Motion, No. 17-6066 (10th Cir. April 6, 2017).

and that it did not expire merely because the Michigan court granted final approval of the settlement. They further point out that the judgment in the Michigan Action has not become final, since several notices of appeal were, in fact, filed by objectors to the settlement, and those appeals remain pending. This court now adheres to its prior decision, for several reasons.

First, the Joint Motion for Preliminary Injunction, on its face, requested only a stay of other cases against the defendants "pending approval of proposed settlement" and anticipated the entry of a permanent injunction enjoining any FLSA plaintiffs who had opted into the Michigan Action from filing any lawsuits or claims relating to the settled matters. (*See* Joint Motion, Mich. Doc. No. 27, at 1, 4.[4]) The parties represented to the Michigan court that they believed "a preliminary injunction enjoining all Pending Proceedings against Defendants nationwide—pending approval of the proposed settlement—enjoining all FLSA opt-in plaintiffs . . . from filing new lawsuits or claims relating to the settled claims" was necessary to facilitate the pending nationwide settlement. (*Id.*) The relief they sought was basically consistent with that representation: they specifically moved the court to "issue a preliminary injunction enjoining all Pending Proceedings against Defendants nationwide *pending approval of the proposed settlement* and enjoin all FLSA opt-in plaintiffs . . . from filing new lawsuits relating to the settled claims." (*Id.* (emphasis added).)

It is widely accepted, as the defendants themselves have acknowledged, that settlements of the type they were putting together in the Michigan Action go through two stages of approval: a preliminary approval and a final approval. (*See* Doc. No. 68, at 2 ("Generally, as to the approval of a class action settlement agreement, 'final' refers to the approval stage. There is a

---

[4] Documents filed in the Michigan Action and not also attached as exhibits to filings in this court's docket are referred to herein by their docket number in that Action, preceded by the notation "Mich.," for example: (Mich. Doc. No. ___).

*preliminary approval*, which precedes notice to the class, and then a *final approval*, if appropriate, following notice and the opt-in/opt-out period.").) At the time they filed their Joint Motion, their Motion for Preliminary Approval was still pending. The Michigan court granted that motion (Mich. Doc. No. 31) before addressing their Joint Motion for Preliminary Injunction, meaning that final approval remained pending. It is clear from the wording of their Motion that they sought a stay pending final approval of the settlement, not pending final judgment.

This court therefore presumed that the Order granting their Motion would go no further than granting the relief specifically requested by the parties. Indeed, the Order appeared to do just that. (*See* Order, Doc.. No. 11-1, at 3 ("Therefore, the Court will exercise its authority under the All Writs Act to enjoin all related proceedings against Defendants pending final approval of the class action settlement."); *id.* at 4 ("WHEREFORE it is hereby ORDERED that the Joint Motion for Preliminary Injunction is GRANTED.").) Some degree of ambiguity was introduced in the final paragraph of the Order, however, where the court stated that the other pending actions, including this one, were preliminarily stayed and temporarily enjoined "pending final resolution of this matter." (*Id.* at 5.) In light of the wording of the Joint Motion for Preliminary Injunction and the court's previous description of the relief it intended to grant, this court nonetheless understood the Order to mean that the injunction would be lifted upon entry of final approval of the proposed settlement, at which time a narrower permanent injunction would be entered.[5]

The court's conclusion in that regard is bolstered by the fact that an order enjoining the plaintiff in this action from pursing even her own claims individually until final resolution of all appeals in the Michigan Action would be overly broad and unreasonable, particularly in light of

---

[5] The fact that the final judgment did not actually incorporate a permanent injunction, however, has no bearing on whether the temporary injunction expired.

the fact that the plaintiff has not opted into the FLSA class in the Michigan Action and has opted out of the Rule 23 class, and resolution of the appeals in the Michigan Action could take years.

Moreover, because the court concludes, as set forth below, that the defendants' Motion to Compel Arbitration must be granted, the court will not consider the plaintiff's Motion for Notice. It therefore appears that whatever concerns the defendants might have had about competing class notices are effectively moot.

For all these reasons, the defendants' Motion to Reconsider will be denied.[6]

## IV.      Motion to Compel Arbitration

The defendants move to stay this action or dismiss it in favor of arbitration. (Doc. Nos. 40, 41.) In response (Doc. No. 62), the plaintiff does not dispute that the arbitration agreement produced by the defendants does, in fact, reflect her signature. Instead she argues that the defendants' motion should be stayed until after the court considers the plaintiff's Motion for Notice. She also filed her separate Motion to Hold in Abeyance. (Doc. No. 67.) With respect to that motion, the court finds that the question of arbitrability is a threshold issue that must be addressed before the Motion for Notice. The court will therefore deny the plaintiff's Motion to Hold in Abeyance.

Further, the court finds that the plaintiff has not established any basis for overcoming the presumption in favor of arbitration, and the Motion to Compel Arbitration must be granted. Because this action will be referred to arbitration, the Motion for Notice will be denied as moot.

---

[6] The court is cognizant that the defendants filed a Motion to Alter or Amend Judgment in the Michigan Action (Mich. Doc. No. 86) on July 14, 2017, specifically requesting that Judge Murphy amend the Opinion and Order approving the parties' settlement (Mich. Doc. No. 77) to "fully incorporate" the terms of the Settlement Agreement into that Order (Mich. Doc. No. 86, at 6) and to clarify that the temporary injunction shall remain in place until the judgment in the Michigan Action becomes final. That motion remains pending as of the date this Memorandum and accompanying Order have been issued.

### A. Priority of the Motion to Compel Arbitration

The plaintiff requests that the defendants' Motion to Compel Arbitration be stayed until after the court rules on her Motion for Notice. In support of this motion, she argues primarily that the arbitration agreement is unenforceable and that it would be inequitable to defer ruling on the Motion for Notice, which was filed months before the defendants filed their Motion to Compel Arbitration. She also posits that many courts have deferred ruling on the issue of whether a collective action should be referred to arbitration until after addressing the issue of whether an FLSA collective action should be certified.

The cases to which the plaintiff cites, however, are inapposite, as they all involve situations in which the named plaintiff in a collective action is not alleged to have signed an arbitration agreement or in which the defendant, in responding to a motion for conditional certification, alludes to the existence of an arbitration agreement but has not actually filed a motion to compel arbitration.[7]

---

[7] *See, e.g.*, *Williams v. Omainsky*, 15-0123-WS-N, 2016 WL 297718 (S.D. Ala. Jan. 21, 2016) (granting motion for conditional certification, where the named plaintiffs had not signed arbitration agreement, and the court had already addressed and granted a motion to compel arbitration as to some opt-in plaintiffs); *Woods v. Club Cabaret, Inc.*, 140 F. Supp. 3d 775, 782–83 (C.D. Ill. 2015) (granting motion for conditional certification despite the defendant's argument that some putative class members might have entered into arbitration agreements that would exclude them from participating in a collective action); *Guzman v. Three Amigos SJL Inc.*, 117 F. Supp. 3d 516, 526 (S.D.N.Y. 2015) (refusing to deny certification of conditional class on the basis that some class members had signed arbitration agreements where the defendants had not alleged that the named plaintiff had signed an arbitration agreement or filed a motion to compel arbitration); *Maddy v. Gen. Elec. Co.*, 59 F. Supp. 3d 675, 681 (D.N.J. 2014) (granting motion for conditional certification despite evidence that some putative plaintiffs had signed arbitration agreements, where the "none of the named plaintiffs are subject to the arbitration agreements"); *Sylvester v. Wintrust Fin. Corp.*, No. 12 C 01899, 2013 WL 5433593, at *9 (N.D. Ill. Sept. 30, 2013) (granting named plaintiff's motion for conditional certification and granting the defendant's motion to stay and compel arbitration as to two opt-in plaintiffs who had signed enforceable arbitration agreements); *Lloyd v. J.P. Morgan Chase & Co.*, Nos. 11 Civ. 9305(LTS), 12 Civ. 2197(LTS), 2013 WL 4828588 (S.D.N.Y. Sept. 9, 2013) (addressing and granting motion for conditional certification before addressing motions to compel some opt-in

Conversely, although the issue has not been frequently litigated, it appears that, when a motion for conditional certification and a motion to compel arbitration are both pending before a district court, courts generally consider the motion to compel arbitration first and, then, if the motion to compel is denied, whether conditional certification is appropriate. *See, e.g.*, *Gaffers v. Kelly Servs., Inc.*, 203 F. Supp. 3d 829 (E.D. Mich. 2016) (confronted with both a motion to compel arbitration and a motion for conditional certification, addressing the motion to compel arbitration first and, upon denying that motion, considering whether certification was appropriate); *Redmond v. NPC Int'l Inc.*, No. 1:13-cv-01037-STA-egb (W.D. Tenn.) (Doc. Nos. 105, 115) (where the parties filed motions to compel arbitration and for conditional certification, addressing—and denying—the motion to compel arbitration first and then staying the motion for conditional certification pending resolution of the defendant's appeal of the denial of its motion to compel arbitration), *aff'd in part sub nom Gunn v. NPC Int'l, Inc.*, 625 F. App'x 261 (6th Cir. 2015); *Opalinski v. Robert Half Int'l*, Inc., No. 10-cv-2069, 2011 WL 4729009 (D.N.J. Oct. 6,

---

plaintiffs to arbitrate their claims, where the defendant did not claim that the named plaintiffs had signed arbitration agreements), *aff'd in part*, 791 F.3d 265 (2d Cir. 2015); *Whittington v. Taco Bell of Am.*, No. 10-cv-01884-KMT-MEH, 2011 WL 1772401, at *5 (D. Colo. May 10, 2011) (denying motion to compel arbitration where the defendant failed to produce an arbitration agreement signed by the named plaintiff, and it was premature to seek to compel putative class members to arbitrate when the class had not yet been certified and those putative plaintiffs were not yet before the court); *Davis v. NovaStar Mortg., Inc.*, 408 F. Supp. 2d 811, 818 (W.D. Mo. 2005) (granting motion for conditional certification despite the defendants' argument that "most, if not all" of the putative class members had signed arbitration agreements, where the defendants had not actually moved to compel arbitration, even though the case had been pending for over a year); *Villatoro v. Kim Son Restaurant, L.P.*, 286 F. Supp. 2d 807, 811 (S.D. Tex. 2003) (declining to consider the effect of "recently implemented arbitration policies and newly signed arbitration agreements," where there was no indication that the defendant had moved to compel arbitration or shown that the named plaintiff had signed an arbitration agreement).

The court has also reviewed the other cases cited by the plaintiff in her Memorandum in Support of her Motion for Notice (Doc. No. 7, at 22) and concludes that the remainder likewise involve situations in which the defendants had not moved to compel arbitration, did not allege that the named plaintiff had signed an arbitration agreement, or both, or in which the defendants' motion to compel arbitration had already been denied.

2011) (denying motion to defer ruling on motion to compel arbitration and to rule first on the motion for conditional certification and, instead, granting the motion to compel arbitration and denying as moot the motion for conditional certification), *rev'd on other grounds*, 761 F.3d 326 (3d Cir. 2014).

> Section 3 of the Federal Arbitration Act ("FAA") states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. The Supreme Court interprets this provision to mean that a court must stay or dismiss a case in favor of arbitration, "once it is satisfied that the issue is arbitrable under the agreement." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967). *See also Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) ("If a court determines that the cause of action is covered by an arbitration clause, it must stay the proceedings until the arbitration process is complete." (citing 9 U.S.C. § 3)); *Burden v. Check into Cash of Ky., LLC*, 267 F.3d 483, 487 (6th Cir. 2001) ("[A] district court's consideration of a motion to compel arbitration is limited to determining whether the parties entered into a valid agreement to arbitrate, and does not reach the merits of the parties' claims.").

The plaintiff has failed to produce any authority substantiating her insistence that the court should consider the Motion for Notice before addressing whether her dispute is governed by an arbitration agreement. The court concludes, based on strong federal policy favoring arbitration, that a motion to compel arbitration must take precedence over virtually any other pending motion. The plaintiff's Motion to Hold Defendants' Motion in Abeyance (Doc. No. 67)

will therefore be denied.

### B.      Merits of the Motion to Compel Arbitration

The plaintiff signed a Club/Performer Contract ("CPC") that, the defendants argue, governs the terms of her business relationship with the defendants. The defendants indicate that they have learned the identity of the plaintiff Jane Doe #1 (*see* Decl. of E. Culbert ("Culbert Decl."), Doc. No. 41-1 ¶ 4) and that the CPC filed with their Motion to Compel is a true and correct copy of the document actually signed by the plaintiff (*id.* ¶ 5). Although the plaintiff does not dispute that she signed the CPC, she disputes its enforceability generally.

The CPC contains the following two paragraphs pertaining to arbitration (respectively, the "Arbitration Provision" and "Waiver Provision"):

> **4. <u>BINDING ARBITRATION</u>: ALL DISPUTES ARISING AT ANY TIME BETWEEN THE PARTIES, WHETHER STATUTORY, CONTRACTUAL OR TORT, SHALL BE DECIDED BY BINDING ARBITRATION HELD PURSUANT TO THE FEDERAL ARBITRATION ACT, AND SHALL BE BEFORE A NEUTRAL ARBITRATOR AGREED UPON BY THE PARTIES. <u>THE PARTIES WAIVE ANY RIGHT TO LITIGATE SUCH DISPUTES IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY</u>. EITHER PARTY MAY DEMAND AN EXPERT IN THE ADULT INDUSTRY. SUBJECT ONLY TO THE PROVISIONS IN THIS PARAGRAPH AND IN PARAGRAPH VI (6), THE ARBITRATOR SHALL BE PERMITTED TO AWARD ANY RELIEF AVAILABLE IN A COURT. THE COSTS OF ARBITRATION SHALL BE ASSIGNED AS REQUIRED BY APPLICABLE LAW. THE ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY DISPUTES OVER THE INTERPRETATION, VALIDITY AND/OR ENFORCEABILITY OF ANY PART OF THIS CONTRACT, INCLUDING THE ARBITRATION PROVISIONS IN THIS PARAGRAPH. ANY AWARD MAY BE ENTERED AS A JUDGMENT IN ANY COURT HAVING JURISDICTION. AN ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT PRESIDE OVER ANY FORM OF REPRESENTATIVE, CLASS, OR COLLECTIVE PROCEEDING. NOTE: SOME AGENCY CLAIMS MAY NOT BE SUBJECT TO ARBITRATION.**
>
> **6.[8] <u>WAIVER OF CLASS AND COLLECTIVE PROCEEDINGS</u>. THE**

---

[8] *Sic.* There is no paragraph 5.

**PARTIES AGREE THAT ANY CLAIMS MADE AGAINST THE OTHER SHALL BE IN AN INDIVIDUAL CAPACITY AND NOT AS A CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION. THE PARTIES AGREE NOT TO CONSOLIDATE ANY CLAIMS WITH THE CLAIMS OF OTHERS.**

(CBC, Doc. No. 41-1, at 12–13 (bold font and all capitals in original).)

The defendants seek to compel the plaintiff to submit her FLSA claims to arbitration based on these provisions. In her Response, the plaintiff argues that (1) the Arbitration and Waiver Provisions violate the National Labor Relations Act ("NLRA"), insofar as they prohibit the plaintiff from pursuing a collective action and are, therefore, invalid and unenforceable (Doc. No. 62, at 1–3 (citing *NLRB v. Alt. Entm't, Inc.*, 858 F.3d 393 (6th Cir. 2017)); (2) the Arbitration and Waiver Provisions violate the FLSA, insofar as they preclude the plaintiff from pursuing FLSA claims as a collective action; (3) the defendants' conduct establishes that they have waived their right to pursue arbitration and/or are estopped from compelling arbitration; (4) the Arbitration Agreement is unenforceable as unconscionable; (5) the Arbitration Provision is unenforceable as insufficiently definite; (6) the Arbitration Provision is void because secured by fraud; (7) the Arbitration Provision is invalid because it does not ensure the effective vindication of statutory rights; (8) even if the Arbitration Provision specifically is enforceable, the claims against nonsignatories to the CPC must proceed in court; and (9) even if the court concludes that the case must be arbitrated, "the Agreement's failure to include a mechanism through which the parties can select a neutral arbitrator requires that the Court determine all gateway issues related to the arbitration agreement" (*id.* at 3). In their Reply (Doc. No. 69), the defendants assert that all of the plaintiff's challenges to the validity and enforceability of the Arbitration and Waiver Provisions must be referred to the arbitrator.

### *1.* *Standard of Review*

The FAA provides that a written agreement to arbitrate disputes arising out a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A party seeking to enforce an arbitration agreement may request that litigation be stayed until the terms of the arbitration agreement have been fulfilled. *Id.* § 3. Upon such application, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* § 4.

When considering a motion to dismiss or stay proceedings and compel arbitration under the FAA, a court has four tasks:

> first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000); *see also Uszak v. AT&T Mobility Servs. LLC*, 658 F. App'x 758, 761 (6th Cir. 2016). With respect to the arbitration agreement's validity, "the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (internal quotation marks and citations omitted). With respect to the agreement's scope, "there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (internal citations and quotation marks

omitted). In other words, keeping in mind the "strong federal policy in favor of arbitration . . . any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration," *Stout*, 228 F.3d at 714, especially when the arbitration clause is written broadly to encompass all claims arising under the contract, *AT&T Techs.*, 475 U.S. at 650. In light of the presumption in favor of arbitrability, the party opposing an arbitration agreement bears the burden of establishing that the dispute is nonarbitrable. *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

### 2. *National Labor Relations Board v. Alternative Entertainment*

The plaintiff argues, first, that Congress did not intend for employers to be able to require employees to waive the right to bring an employment dispute in the form of a collective action, whether in court or in arbitration and, therefore, that the arbitration agreement is invalid in its entirety. This threshold issue of the legality of the waiver is one for the court rather than for an arbitrator. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628 (1985) (identifying the district court's responsibility to inquire whether legal constraints external to the parties' agreement foreclosed the arbitration of otherwise arbitrable claims).

Citing a recent Sixth Circuit opinion, the plaintiff argues that "an arbitration provision requiring employees covered by the NLRA individually to arbitrate all employment-related claims is not enforceable. Such a provision violates the NLRA's guarantee of the right to collective action and, because it violates the NLRA, falls within the FAA's saving clause." (Doc. No. 62, at 3 (quoting *Alt. Entm't*, 858 F.3d at 408).)

In *Alternative Entertainment*, the Sixth Circuit held, in the context of a labor dispute involving changes in certain employees' compensation and their ability to discuss their concerns about salary and wages with each other, that an arbitration provision expressly prohibiting

collective actions violated Section 7 of the National Labor Relations Act ("NLRA"), 29 U.S.C. §

157.

That provision states that "[e]mployees shall have the right to self-organization, to form,

join, or assist labor organizations, to bargain collectively through representatives of their own

choosing, and to engage in other concerted activities for the purpose of collective bargaining or

other mutual aid or protection." Further, "[c]ontractual provisions that 'illegal[ly] restrain[]'

employees' rights under the NLRA are unenforceable." *Alt. Ent'mt*, 858 F.3d at 401 (quoting

*Nat'l Licorice Co. v. NLRB*, 309 U.S. 350, 360, 365 (1940)). The Sixth Circuit construed "other

concerted activities" to include collective "resort to administrative and judicial forums" for the

purpose of "achiev[ing] more favorable terms or conditions of employment." *Alternative Ent'mt*,

585 F.3d at 402 (quoting *Eastex, Inc. v. NLRB*, 437 U.S. 556, 565–66 (1978); *Brady v. Nat'l

Football League*, 644 F.3d 661, 673 (8th Cir. 2011)).

The appellate court framed the issue before it as implicating both the NLRA and the FAA

and as requiring a determination of whether the arbitration provision was enforceable under both

of those statutory schemes. The court noted that, while the question of "[w]hether federal law

permits employers to require individual arbitration of employees' employment-related claims"

was one of first impression in the Sixth Circuit, *Alt. Ent'mt*, 858 F.3d at 401, it had already been

the subject of "robust debate" around the country. *See id.* (citing *Morris v. Ernst & Young, LLP*,

834 F.3d 975, 985–86 (9th Cir. 2016) (holding arbitration provisions mandating individual

arbitration of employment-related claims violate the NLRA and fall within the FAA's saving

clause); *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147, 1160 (7th Cir. 2016) (same); *Murphy Oil USA,

Inc. v. NLRB*, 808 F.3d 1013, 1018 (5th Cir. 2015) (upholding its earlier holding in *D.R. Horton,

Inc. v. NLRB*, 737 F.3d 344 (5th Cir. 2013), that arbitration provisions mandating individual

arbitration of employment-related claims do not violate the NLRA and are enforceable under the FAA); *Cellular Sales of Mo., LLC v. NLRB*, 824 F.3d 772, 776 (8th Cir. 2016) (upholding its earlier holding in *Owen v. Bristol Care, Inc.*, 702 F.3d 1050 (8th Cir. 2013), that arbitration provisions mandating individual arbitration of employment-related claims do not violate the NLRA)).

On January 13, 2017, the Supreme Court granted writs of certiorari in *Morris*, *Lewis*, and *Murphy Oil* and consolidated the three cases. 137 S. Ct. 809 (2017). The Supreme Court case remains pending. Meanwhile, however, the Sixth Circuit rejected the reasoning and conclusions of the Fifth and Eighth Circuits and instead

> join[ed] the Seventh and Ninth Circuits in holding that an arbitration provision requiring employees *covered by the NRLA* individually to arbitrate all employment-related claims is not enforceable. Such a provision violates the NLRA's guarantee of the right to collective action and, because it violates the NRLA, falls within the FAA's saving clause.

*Alternative Ent'mt*, 585 F.3d at 408 (emphasis added).

This court concludes that the holding in *Alternative Entertainment* has no bearing here, for several reasons. First, plaintiff Jane Doe #1 is not an "employee covered by the NLRA." The NLRA defines the term "employee" to

> include any employee, and shall not be limited to the employees of a particular employer, unless this subchapter explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice . . . .

29 U.S.C. § 152(3). Even assuming for purposes of the Motion to Compel that the plaintiff qualified as an employee rather than an independent contractor while she worked for the defendants, she specifically asserts that she is a "former" performer at one of the defendants' facilities. (Jane Doe #1 Declaration, Doc. No. 7-6 ¶ 1.) She does not allege that her employment ceased as a result of a labor dispute or an unfair labor practice. *See Allied Chem. & Alkali*

*Workers of Am., Local Union No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 166, 168 (1971) (holding that "the term 'employee' is not to be stretched beyond its plain meaning embracing only those who work for another for hire" and therefore "does not include retired workers"); *Merk v. Jewel Cos.*, 848 F.2d 761, 765 (7th Cir. 1988) (presuming without deciding that, "[a]lthough the statute [§ 152(3)] does not in terms exclude workers who have retired, quit, or been fired, . . . [the defendant's] former employees . . . lost their status as NLRA 'employees' when they left work for reasons other than a labor dispute or unfair labor practice" (citing *Pittsburgh Plate Glass Co.*). Because the plaintiff is not an "employee covered by the NRLA," the holding in *Alternative Entertainment* does not extend to her arbitration agreement.

Second, it is not apparent to the court that a collective action under the FLSA qualifies as "concerted activit[y]" protected by the NLRA. The NLRA protects the right of employees "to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. While class or collective actions might qualify as concerted activities in some contexts, the language of the statute implies that the "other concerted activities" protected by the statute are activities related to collective bargaining and the achievement of "more favorable terms or conditions of employment." *Alt. Ent'mt*, 585 F.3d at 402. Pursuing litigation for the purpose of requiring an employer to comply with federal law is not the same as seeking more favorable terms or conditions of employment by contract.

Third, although the holdings of the Seventh and Ninth Circuits were not limited to claims brought by the NLRB or to labor disputes *per se*,[9] the holding in *Alternative Entertainment* does

---

[9] *Morris* and *Lewis* both involved FLSA actions brought by individual plaintiffs who sought to pursue collective actions on behalf of similarly situated employees. In both cases, the plaintiffs had signed agreements requiring them to pursue employment-related claims against the

appear to be limited to claims brought under the NLRA—that is, claims concerning unfair labor practices that fall within the purview of the NLRB. The facts of *Alternative Entertainment* arose from that particular arena. It was brought by the NLRB, seeking enforcement of a prior decision and order by the NLRB in a classic labor dispute, and the court was not called upon to address the confluence of the FLSA and the FAA.

For all these reasons, the court finds that *Alternative Entertainment* has no bearing on the collective action waiver at issue here.

### 3. Collective Action Waivers and the FLSA

The Arbitration and Waiver Provisions in the CPC unambiguously bar collective action arbitration. The plaintiff argues that these provisions are unenforceable because waivers of the right to bring a collective action in FLSA cases violate employees' substantive rights under the FLSA. The court construes this argument, too, as raising a threshold issue of the legality of the Waiver Provision.

The Sixth Circuit has not directly addressed this question, but it has strongly suggested that such waivers are enforceable. *See Huffman v. Hilltop Cos.*, 747 F.3d 391, 398–99 (6th Cir. 2014) (holding in the case of a plaintiff who sought to pursue a collective action under the FLSA that, when an "arbitration clause does not authorize classwide arbitration, . . . the plaintiffs must

---

employer exclusively through arbitration and to arbitrate only as individuals and not as a collective. *Morris*, 834 F.3d at 979; *Lewis*, 823 F.3d at 1151. In *Morris*, the defendant moved to compel arbitration, and the district court ordered individual arbitration in accordance with the agreements and dismissed the case; the Ninth Circuit reversed. In *Lewis*, the district court denied the defendant's motion to compel arbitration, and the Seventh Circuit affirmed. In both cases, the appellate courts held that § 7 of the NLRA, 29 U.S.C. § 157, mandates a right to collective legal action for employees and, therefore, that a provision in an arbitration agreement in which an employee purports to waive the ability to bring a collective legal action is illegal and unenforceable under the FAA's savings clause. *Morris*, 834 F.3d at 989–90; *Lewis*, 823 F.3d at 1161.

proceed individually").[10] And, although the Sixth Circuit has recognized generally that "a plaintiff's right to participate in a collective action [under the FLSA] cannot *normally* be waived," *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 590–91 (6th Cir. 2014), it has suggested that the enforceability of such waivers may depend on whether they are part of an arbitration agreement. *See id.* at 592 ("Because no arbitration agreement is present in the case before us, we find no countervailing federal policy that outweighs the policy articulated in the FLSA.").

The Supreme Court has not yet directly answered the question of whether an employee's waiver of the right to bring an FLSA collective action is enforceable either, but the trajectory of its prior holdings clearly heads in the direction of upholding such waivers. *See, e.g.*, *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (upholding arbitration agreements that forced merchants to arbitrate their antitrust claims against American Express on a non-class basis); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 23–24, 32 (1991) (holding that employment agreements requiring arbitration of age-discrimination claims did not violate the Age Discrimination in Employment Act, even if arbitration procedures do not provide for class actions).

Based largely on these Supreme Court decisions, every other circuit court confronted directly with the question has held that employers may require their employees to sign agreements that mandate arbitration of FLSA claims on an individual basis and that such waivers are enforceable. *See, e.g.*, *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1327, 1334 (11th Cir. 2014) (rejecting the appellant's argument that an arbitration agreement waiving an employee's ability to bring a collective action under the FLSA is unenforceable under the Federal Arbitration Act and affirming the district court's order compelling individual arbitration

---

[10] To be clear, the *Huffman* court was not actually asked to consider whether the waiver of the right to bring a collective action under the FLSA violated the FLSA.

of FLSA claim); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 296 (2d Cir. 2013) (reversing the district court's decision that a class-action waiver provision in an employee's arbitration agreement was unenforceable); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1054–55 (8th Cir. 2013) (same, listing other appellate decisions reaching the same conclusion). *See also McGrew v. VCG Holding Corp.*, No. 3:16-CV-00397-TBR, 2017 WL 1147489, at *7 (W.D. Ky. Mar. 27, 2017) (holding that "arbitration agreements [with collective-action waivers] may be enforced without running afoul of the FLSA").[11]

Although this court does not necessarily agree with these cases, the writing appears to be on the wall that this trend is becoming uniform law. Therefore, in consonance with the weight of authority, this court holds that the plaintiff's waiver of her right to pursue a collective action is enforceable.

### 4.  *The Delegation Clause*

The plaintiff implicitly concedes that her FLSA claims fall within the scope of disputes encompassed by the Arbitration Provision, but she objects to the enforcement of the Arbitration Provision under theories of waiver, estoppel, and unconscionability. The defendants, in response, point out that the Arbitration Provision contains a delegation clause ("Delegation Clause"), which requires such challenges to the enforceability of the Arbitration Provision to be decided by the arbitrator.

As set forth above, the Delegation Clause in the Arbitration Provision states that "the arbitrator shall have exclusive authority to resolve any disputes over the interpretation, validity

---

[11] At least one district court within the Sixth Circuit has held that an arbitration clause in an employment agreement prohibiting collective action is unlawful and unenforceable under the FLSA. *Gaffers v. Kelly Servs., Inc.*, 203 F. Supp. 3d 829 (E.D. Mich. 2016), *appeal pending*, No. 16-2210 (6th Cir.). Both *Gaffers* and *McGrew* have been appealed, and the Sixth Circuit will presumably resolve this dispute soon.

and/or enforceability of any part of this contract, including the arbitration provisions in this paragraph." (CBC, Doc. No. 41-1, at 12.) The Supreme Court has upheld such broad delegation of authority to arbitrators. *See, e.g.*, *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010).

In *Rent-A-Center*, the plaintiff filed an employment discrimination suit under 42 U.S.C. § 1981 against his former employer; the employer filed a motion to compel arbitration. The arbitration provision at issue there provided for arbitration of all disputes arising out of the plaintiff's employment with the defendant, including discrimination claims and claims for violation of federal law. 561 U.S. at 65–66. It also provided that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable." *Id.* at 66. The plaintiff argued that the arbitration agreement was unenforceable as unconscionable under state law. Specifically, among other matters, he claimed that the requirement that the parties split the arbitration fees was substantively unconscionable. The Ninth Circuit held that the question of unconscionability was a threshold question for the court rather than for the arbitrator. The Supreme Court reversed, reiterating that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* at 68–69. It held that such a delegation provision is separately enforceable under the FAA, because, under the FAA, "an arbitration provision is severable from the remainder of the contract." *Id.* at 70–71. In other words, "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Id.* at 70. This severability rule applies even if the delegation provision is contained within the arbitration

agreement. *Id.* at 72.

The Court conceded that delegation to an arbitrator of gateway issues does not mean that a federal court should automatically grant a motion to compel arbitration, because the party seeking to avoid arbitration may still raise defenses to the agreement to delegate. *Id.* That is, the party seeking to avoid the effects of a delegation provision may "challenge[] the delegation provision specifically." *Id.* If that party fails to do so, however, a court must treat the delegation provision as valid and enforce it as written. *Id.*

Here, as in *Rent-A-Center*, the parties "clearly and unmistakably" provided for an arbitrator to determine "gateway issues" relative to their claims, *id.* at 69 n.1 (quoting *AT&T Techs.*, 475 U.S. at 649); *id.* at 70, including "disputes over the interpretation, validity and/or enforceability" of the Arbitration Provision itself. (CBC, Doc. No. 41-1, at 12.) The plaintiff challenges the enforceability of the Arbitration Provision *as a whole* based on principles of waiver, estoppel, and unconscionability, but, again as in *Rent-A-Center*, she does not specifically refer to or even mention the Delegation Clause. As a result, under *Rent-A-Center*, the court "must treat [the Delegation Clause] as valid under § 2 [of the FAA]." *Rent-A-Center*, 561 U.S. at 72.

Moreover, under *Rent-A-Center*, the plaintiff's claim that the Arbitration Provision is unconscionable constitutes a challenge to its enforceability that clearly falls within the scope of matters delegated to the arbitrator under the Delegation Clause. The plaintiff's arguments regarding waiver and estoppel also constitute a challenge to the enforceability of the Arbitration Provision and likewise have been delegated. And, as the defendants point out, even without the Delegation Clause, the Sixth Circuit has held that such matters as waiver and estoppel "are presumptively *not* for a judge, but for an arbitrator, to decide." *United SteelWorkers of Am. v.*

*Saint Gobain Ceramics & Plastics, Inc.*, 505 F.3d 417, 421 (6th Cir. 2007) (emphasis in original) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).

Based on this precedent, the court concludes that the plaintiff's arguments that the Arbitration Provision is unenforceable as unconscionable or based on waiver and estoppel are matters for the arbitrator, and not the court, to decide.

### 5.    *"Generally Applicable Contract Defenses"*

The plaintiff raises a number of defenses to which she refers as "generally applicable contract defenses" (Doc. No. 62, at 17), including that the Arbitration Provision was secured by fraud, is insufficiently definite to be enforced, and does not ensure the effective vindication of statutory rights.

The plaintiff's claim that the Arbitration Provision is insufficiently definite to be enforced, as a challenge based on enforceability, is subject to the Delegation Clause.

Regarding her claim that the Arbitration Provision and CPC as a whole were "procured by fraud" (Doc. No. 62, at 21), the plaintiff argues only that the CPC itself manifests an "illegal scheme" "concocted" by the defendants to deny the plaintiff and other performers "their rights as employees under the FLSA and a myriad of other federal and state statutes." (*Id.*) She claims that, "[a]s part of this scheme, Defendants defrauded Plaintiff and others into believing that the parties could determine by contract whether the FLSA and other statutes governed their relationship." (*Id.*) The plaintiff does not challenge the Arbitration Provision specifically as induced by fraud. Rather, she appears to argue that, because the CPC as a whole is invalid, the Arbitration Provision "somehow 'goes down with the ship.'" (Defs.' Reply, Doc. No. 69, at 5.) In other words, the purported "fraud" goes to the heart of the dispute: whether the defendants violated the FLSA. This is a matter clearly delegated to the arbitrator. *See Buckeye Check*

*Cashing, Inc., v. Cardegna*, 546 U.S. 440, 445–46 (2006) ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.").

The plaintiff also argues that she cannot effectively vindicate her FLSA rights in arbitration, in particular because the clause establishing that "either party may demand an expert in the adult industry" (CBC, Doc. No. 41-1, at 12) means that the agreement does not provide for the selection of an unbiased arbitrator. (Doc. No. 62, at 21.) The Sixth Circuit has recognized that an employee cannot effectively vindicate her rights when "the arbitrator-selection process itself is fundamentally unfair." *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 385 (6th Cir. 2005). On the other hand, a party generally "cannot avoid the arbitration process simply by alleging that the arbitration panel will be biased, because the FAA 'protects against bias, by providing that courts may overturn arbitration decisions "[w]here there was evident partiality or corruption in the arbitrators."'" *Id.* (quoting *Gilmer*, 500 U.S. at 30 (quoting 9 U.S.C. § 10(b))). Here, the Arbitration Provision states that the arbitration "shall be held pursuant to the Federal Arbitration Act, and shall be before a neutral arbitrator agreed upon by the parties" (CBC, Doc. No. 41-1, at 12), and the defendants have expressly stipulated that they will waive their right to demand an industry expert as an arbitrator. (Doc. No. 69, at 18.) The court finds that this provision calls for the selection of a neutral arbitrator in accordance with the FAA and does not invalidate the entire Arbitration Provision.

### 6. *Inclusion of Nonsignatories to the Arbitration Provision in the Lawsuit*

The plaintiff argues that the only parties to the CPC and its Arbitration Provision are defendant Déjà Vu Nashville, Inc. and Jane Doe #1 and that the remaining defendants are not signatories. Because the other defendants are not signatories and did not offer any consideration

in exchange for the agreement to arbitrate, the plaintiff argues, she did not agree to arbitrate her claims against those parties. The defendants respond that the plaintiff is bound to arbitrate against the nonsignatory defendants under theories of agency and estoppel.

As previously observed, federal law establishes a strong policy in favor of compelling arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (U.S. 1983); *Huffman*, 747 F.3d at 394. Nonetheless, because arbitration is "a matter of contract," the plaintiff is correct that a party generally "cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs.*, 475 U.S. at 648 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)).

The Supreme Court has also recognized, however, that arbitration agreements are simply contracts, and the "liberal federal policy favoring arbitration agreements" as manifested by the FAA is "at bottom a policy guaranteeing the enforcement of private contractual arrangements." *Mitsubishi Motors Corp.*, 473 U.S. at 625. Consequently, arbitration agreements will be enforceable by or against nonsignatories to the same extent that any other contract would be enforceable by or against nonsignatories under state law. *See, e.g.*, *Javitch v. First Union Secs., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003) ("[N]onsignatories may be bound to an arbitration agreement under ordinary contract and agency principles." (citing *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir. 1990)). Indeed, federal courts have recognized at least five specific doctrines justifying the application of an arbitration clause to a nonsignatory: "'(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel.'" *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 97 (2d Cir. 1999) (quoting *Thomson–CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)); *accord Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 (5th Cir. 2003); *Javitch*,

315 F.3d at 629; *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 (4th Cir. 2000). *See also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (recognizing that "traditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel" and that such principles apply to arbitration agreements).

Among these theories, estoppel is the most obviously applicable to the circumstances presented here. Underlying the estoppel theory is the presumption that signatories should not be permitted to avoid arbitrating "claims of the very type" they agreed to arbitrate simply because they have sued a nonsignatory. *Bridas S.A.P.I.C.*, 345 F.3d at 361. Guided by such fairness concerns, many federal cases suggest "that a nonsignatory to an arbitration agreement may compel a signatory to arbitrate when the issues the nonsignatory is seeking to arbitrate are intertwined with the underlying agreement." *Legacy Wireless Servs., Inc. v. Human Capital, L.L.C.*, 314 F. Supp. 2d 1045, 1055 (D. Or. 2004) (citation omitted); *see, e.g.*, *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177 (2d Cir. 2004) (applying estoppel theory to reverse district court's order denying nonsignatories' motion to compel arbitration); *Astra Oil Co. v. Rover Navigation, Ltd.*, 344 F.3d 276, 279 (2d Cir. 2003) (granting nonsignatory's motion to compel arbitration); *Javitch*, 315 F.3d at 629 (6th Cir. 2003) (vacating the district court's denial of the defendants' motions to compel arbitration agreements under estoppel theory, noting that "a signatory . . . may be estopped from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the underlying contract"); *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757–58 (11th Cir. 1993) (applying estoppel where "the close relationship between the entities involved, as well as the

relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract . . . and [where] the claims were intimately founded in and intertwined with the underlying contract obligations").

In this case, the plaintiff specifically alleges that all of the defendants have acted in concert and on behalf of Déjà Vu of Nashville. She alleges that all defendants employed her as an entertainer at Déjà Vu of Nashville (Am. Compl., Doc. No. 5 ¶ 45); that Deja Vu Consulting and Deja Vu Services "own, control, and operate" Déjà Vu of Nashville (*id.* ¶¶ 16, 32–33, 36–37); that defendants Harry Mohney and Jason Mohney both "own[], manage[], and/or control[]" all three of the Déjà Vu defendants (*id.* ¶¶ 17–18); and that "each Defendant have [sic] acted in the interest of an employer or joint employer" of the plaintiff (*id.* ¶ 27). In bringing this suit, the plaintiff challenges the CPC generally as an invalid attempt to contract away her rights under the FLSA. (*See, e.g.*, *id.* ¶ 3 ("Defendants crafted two separate agreements, one for 'employees' and one for 'independent contractors' and force the putative class to choose which classification under which they will be employed. . . . The very nature of this scheme violates the law and was designed by Defendants solely to avoid paying its Showgirls the minimum and overtime wages, as well as other requirements, of the FLSA."); *id.* ¶ 4 ("Notwithstanding any Putative FLSA Class member's "election" to be classified as an "independent contractor," Defendants are actually the Showgirls' employers under the law.").

In other words, the plaintiff's allegations, if true, establish that the nonsignatory defendants were alter egos of, or in an interdependent relationship with, Déjà Vu of Nashville, the signatory defendant, and that her claims against the nonsignatories are inextricably "intertwined with the underlying contract," *Javitch*, 315 F.3d at 629, and with her claims against Déjà Vu of Nashville. The court therefore finds that the plaintiff is estopped from asserting that

she did not agree to arbitrate her claims against the nonsignatories.

Alternatively, the court notes that it appears that this, too, is a matter that may be and—given the breadth of the Delegation Clause in the Arbitration Provision here—likely has been effectively delegated to the arbitrator to decide. *Accord Contec Corp. v. Remote Sol., Co., Ltd.*, 398 F.3d 205, 209 (2d Cir. 2005) (holding that the issue of whether the signatory was estopped from avoiding arbitration with a nonsignatory was effectively delegated in the arbitration agreement).

In either event, the plaintiff's contention that her claims against nonsignatories must proceed in this court is without merit.

### C.     Conclusion: Enforceability of the Arbitration Provision and Whether to Dismiss or Stay

The plaintiff has failed to carry her burden of establishing that the dispute is nonarbitrable, and the court will, therefore, grant the Motion to Compel Arbitration. The only question that remains is whether to dismiss or stay this action pending resolution of the arbitration. The defendants argue that, because all of the plaintiff's claims are subject to arbitration, the Amended Complaint should be dismissed. The plaintiff has not addressed this issue and does not expressly request a stay.[12]

Once an arbitration clause is deemed enforceable, it is generally proper under 9 U.S.C. § 3 to issue a stay of all further proceedings until arbitration is complete. *See, e.g.*, *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003). However, when all of the plaintiff's claims in a suit will be referred to arbitration, the Sixth Circuit has held that the case may be dismissed rather than stayed. *Ozormoor v. T–Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir.

---

[12] The plaintiff requested only that the entire question of arbitrability be stayed pending resolution of her Motion for Notice.

2009) (affirming the district court's order compelling arbitration and dismissing the complaint when all claims were referred to arbitration); *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) (noting that the "[t]he weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration"). Numerous district courts in this circuit have dismissed actions where all claims are subject to arbitration. *See, e.g.*, *Braxton v. O'Charley's Rest. Props., LLC*, 1 F. Supp. 3d 722, 728–29 (W.D. Ky. 2014) (collecting cases). Because all of the plaintiff's claims in this case are subject to arbitration, dismissal is appropriate.

Moreover, the Sixth Circuit has recently held that the court's authority to stay an action under 9 U.S.C. § 3 is conditioned upon several factors, including whether one of the parties actually applies for a stay. *Hilton v. Midland Funding, LLC*, No. 16-1556, 2017 WL 1531638, at *3 (6th Cir. April 28, 2017). Because the defendants in that case made only "one passing reference to staying the proceedings and the plaintiff did not request a stay, the court held that the district court did not err in dismissing rather than staying the proceedings. *Id.* ("If Hilton wanted the district court to stay the proceedings rather than dismiss them, Hilton needed explicitly to request a stay."). Here, because the defendants expressly request dismissal rather than a stay and the plaintiff has not requested a stay or articulated a basis for staying rather than dismissing this action, the court finds it appropriate to grant the defendants' motion to dismiss this action pending arbitration on this basis as well.

Under the terms of the Arbitration Provision itself and the procedure established by § 10 of the FAA, 9 U.S.C. § 10, and by *Green*, 200 F.3d at 974 n.5, either party may seek further relief in this court upon the conclusion of the arbitration.

## V.  Conclusion

For the reasons set forth herein:

(1) Plaintiff's Motion to Proceed Pseudonymously, to Permit Filing of All Unredacted Consents Under Seal, and for Entry of a Permanent Protective Order (Doc. No. 49) will be granted in part and denied in part. The plaintiff will be permitted to file this case pseudonymously and to maintain her anonymity in public court filings, but her request to file future consents under seal has been rendered moot by the court's ruling on the other pending motions, and her proposed Protective Order is too broad. The court will enter a much narrower Protective Order.

(2) The defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 59) will be denied as moot.

(3) The defendants' Motion to Reconsider (Doc. No. 43) the court's previous Order (Doc. No. 34) will be denied.

(4) The plaintiff's Motion to Hold Defendants' Motion to Dismiss in Abeyance (Doc. No. 67) will be denied.

(5) The defendants' Motion to Dismiss or to Stay in Favor of Arbitration (Doc. No. 40) will be granted, and this action will be dismissed without prejudice.

(6) The plaintiff's Motion for Expedited Court-Supervised Notice to Putative Class Members Pursuant to 29 U.S.C. § 216(b) (Doc. No. 6) will be denied as moot.

An appropriate Order is filed herewith.

It is so ORDERED.

ENTER this 1st day of September 2017.

_____
ALETA A. TRAUGER
United States District Judge